No. 24,263.

EMIL OLSON, *Appellee*, v. ANDREW BEER and REGINA BEER, *Appellants.*

SYLLABUS BY THE COURT.

1. CONTRACT—*Sale of Land—Isolated and Unsigned Paragraph on Back of Contract—No Part of Contract.* An isolated and unsigned paragraph printed across the middle of the back of a land-purchase contract, which in itself was clear and complete in its terms, and to which no reference was made in the text of the agreement signed by the parties, cannot be imported by interpretation into the body of the contract to effect a forfeiture of defendant's interest in the property in violation of the principles of equity.

2. SAME—*Sale of Land—Waiver of Fixed Time of Payments on Contract.* Defendant bought a tract of land from plaintiff, agreeing to pay him one-half the wheat crops raised thereon, on or prior to the first day of October each year, until 6,800 bushels should thus be delivered. Defendant made three annual deliveries, aggregating 1,848 bushels of wheat, of the value of $3,143.44, in compliance therewith, but such deliveries were always a few months late. *Held,* that plaintiff's acceptance of such belated deliveries of wheat constituted a waiver of the stipulation governing the time fixed for the annual deliveries.

Appeal from Trego district court; ISAAC ·T. PURCELL, judge. Opinion filed February 10, 1923. Reversed.

*J. E. Driscoll,* of Russell, and *Herman Long,* of Wakeeney, for the appellants.

*John R. Parsons,* of Wakeeney, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action to cancel a contract for the sale of a quarter section of Trego county land.

In February, 1916, the plaintiff and defendant entered into a written contract whereby the plaintiff agreed to sell and the defendant agreed to buy the land on the wheat plan of payment. Defendant was to break and cultivate the land and sow it to wheat and give the plaintiff half the crop on or before October 1 in each year until 6,800 bushels should be thus delivered, whereupon plaintiff was to convey the property to defendant. The contract also provided that if the defendant failed to perform his contract punctually, time being of the essence, plaintiff should have the right to declare it void, and that defendant's interest in the property should terminate, and all payments made and improvements placed on the property by defendant should become the property of the plaintiff.

Pursuant to this contract, the defendant made the following payments:

| | | |
|---|---|---|
| Dec. 10, 1918, 500 bu. of wheat | | $980.00 |
| May 22, 1920, 500 bu. of wheat | | 961.65 |
| Mar. 5, 1921, 848 bu. of wheat | | 1,201.79 |

Across the back of the contract, on the middle of the page, and isolated from the text of the agreement signed by the parties, nor referred to therein, was a printed but unsigned recital—

"It is intended that this contract, so far as share of wheat is concerned, terminates at the end of five years from the date hereof, and the unpaid balance shall be calculated on the basis in dollars and cents of the market price of wheat at that time, and to be paid in cash in full, but for any time it should remain unpaid to draw interest at the rate of 8 per cent per annum."

On August 10, 1921, this action was begun. Plaintiff set up the contract and alleged the default of defendant—

"This plaintiff says further that more than five years have elapsed since the making of said contract, that the amount endorsed on said contract is all that has been paid on the same and that the said defendants have neglected to make any further payments thereon. . . .

"The plaintiff says further that by the terms of said contract it is especially specified that time is of the essence of said contract. . . .

"The plaintiff has declared, and does at this time declare said contract null and void on account of above failures of the defendants to comply with the

terms thereof, and prays that he may have judgment according to the terms provided for forfeiture in said contract and that the interests of the said defendants and each and every person claiming through or under them shall be forever barred."

Defendant's answer contained a general denial, and a plea of waiver as to the time of belated deliveries of wheat by plaintiff's acceptance thereof; that the land was raw prairie when he took possession, and that he had erected thereon a house, barn, chicken house, cement cave, a well and windmill, and had fenced and cross-fenced the property, all of the aggregate value of $3,500, which he would lose together with the $3,143.44 worth of wheat admittedly received by the plaintiff, if the forfeiture prayed for by plaintiff were allowed and decreed by the court. Defendant also alleged that the rental value of the raw prairie land in the condition it was when the contract was made was $225 to $240 per annum.

Defendant demanded a jury trial, which was granted over plaintiff's objection. Special questions were answered, and a general verdict was rendered in favor of appellee for $1,166.

The special findings read:

"1. Q. Did the defendants deliver to the plaintiff the wheat provided for in the contract at the times at which it was specified they should by the terms of the contract? A. No.

"2. How much wheat did the defendants thresh from said land in the year 1920? A. 1,696.

"3. Did the plaintiff complain at or near the time of the delivery of the 848 bushels that the defendant had failed to deliver the full amount they were to deliver? A. Yes.

"4. Did the plaintiff ever waive the failure of the defendants to deliver the wheat at the time called for in the contract? A. Yes.

"5. If you find that the defendants failed to deliver the amount that they were required to deliver in the year 1920, state whether the plaintiff ever waived the delivery of this shortage, if any you find? A. We find no shortage.

"7. What was the price of No. 3 wheat on February 18, 1921, at Ellis, Kan.? That is, per bushel? A. We do not know.

"8. Did the defendants ever tender the plaintiff the balance of the purchase price of said land either in money or in wheat? A. No.

"9. What sum if any do you find that the defendants still owe the plaintiff upon the contract price for the purchase of said land? A. $1,166.

"10. When was the balance of the purchase price of said land to be paid? A. No time set."

Plaintiff moved to set aside the general verdict, and findings 4, 7, 9 and 10, and for a finding by the court that the balance of wheat due on the contract was 4,952 bushels, of the value of $1.50 per bushel as shown by the evidence.

Olson v. Beer.

This motion was sustained in all its parts, and judgment was entered for plaintiff for $7,997.24 and a lien therefor was imposed on the property, and execution ordered unless the judgment were paid in ten days. Order of sale issued accordingly; the land was sold by the sheriff, plaintiff being the bidder; and the sale was confirmed subject to six months' redemption.

Defendant appeals, complaining generally of the judgment, and because the trial court set aside the jury's findings and rendered judgment contrary thereto, and because the redemption period was limited to six months.

This court deems it unnecessary to consider all these assigned errors. It has been declared time and again that courts abhor forfeitures and will lend no aid in their enforcement where that disagreeable task may be avoided. (*Cue v. Johnson*, 73 Kan. 558, 85 Pac. 598; *Wilson v. Begshaw*, 108 Kan. 543, 546, 196 Pac. 605.) In this case, if the forfeiture demanded must be enforced defendant stands to lose all he has paid, $3,143.44, and all the improvements he has placed on this property, and this, according to the judgment, is unavoidable unless the further sum of $7,997.24 be paid within six months. This inequitable result is obviously due to the terms of the isolated paragraph printed on the back of the contract, which declared that the time for payment of the land by the delivery of wheat was limited to five years, and that the basis for computing any remaining amount then due should be market value of wheat at that time. This isolated paragraph on the middle of the back of the contract can only be considered as a part of its text by a most elastic and liberal interpretation—an interpretation which could scarcely be given even to effectuate justice between the parties, and certainly not one which in equity and good conscience can be given to aid a forfeiture which so greatly offends our sense of justice. The contract signed by the parties clearly and completely contained all the necessary and pertinent requirements for the sale and purchase of the land. The number of bushels to be paid was specified, the times of delivery were specified, the proportion of each year's crops to be delivered was specified, and since the matter of time when half the crops would aggregate 6,800 bushels depended wholly upon the uncertainties and hazards of agriculture, no precise time for completion of deliveries of wheat could be specified. The testimony was in harmony with that view.

[Counsel for defendant.] "Mr. Beer, was anything said in that conversation about when the five years should be up? A. No."

[Objection. Overruled.]

"Q. I am asking as to whether anything was said about when the five years should terminate?"

[Objection. Overruled.]

"A. No. There was nothing said.

"Q. Mr. Beer, at the time you made this contract did you agree with Mr. Olson that you would pay him all that was left at the end of five years from the time you made the contract; that would be February, 1921. Did you agree to pay him all that was left on the contract at that time, in cash? A. No."

If this provision for termination of wheat payments and maturity of the contract was a part of the agreement of sale and purchase, it should have been embodied in the text of the contract and signed by the parties, not isolated and set down unsigned on the middle of the back of the contract. Isolated recitals on letter heads, bill heads and invoices, and in foot notes and on the back of printed forms of mortgages and other contracts, not directly connected with the main text nor an obvious part of it, and to which no reference is made in the written agreements signed by the parties, are often excluded from consideration in the interpretation of contracts, not alone in equity but in law also. (*Sturm v. Boker*, 150 U, S. 312, 37 L. Ed. 1093, and Rose's notes thereto in appendix, 646, 647; *The Leader Co. v. L. R. Ry & Elec. Co.*, 120 Ark. 221; *Summers v. Hibbard & Co.*, 153 Ill. 102, 46 A. S. R. 872; *Sturtevant Co. v. Fireproof Film Co.*, 216 N. Y. 199, L. R. A. 1916 D, 1069, 1072; *Menz Lumber Co. v. McNeeley & Co.*, 58 Wash. 223, 28 L. R. A., n. s., 1007; 13 C. J. 537; 6 R. C. L. 847-852.)

Touching minor matters invoked, we note that although time was of the essence of the contract and the annual deliveries of wheat were always later than October 1, yet the deliveries were always accepted; and of course the acceptance of belated deliveries was a waiver of the consequences of delay. (*National Land Co. v. Perry*, 23 Kan. 140; *Lumber Co. v. Horrigan*, 36 Kan. 387, 390, 391, 13 Pac. 564; *Shade v. Oldroyd*, 39 Kan. 313, 18 Pac. 198; *Holman v. Joslin*, 110 Kan. 674, 204 Pac. 697; 205 Pac. 629; 13 Cyc. 689.)

Otherwise than in these belated deliveries of wheat, there has been no breach of this contract. It is still in full force. It follows that the judgment must be reversed and the cause remanded with instructions to enter judgment for defendant.

It is so ordered.