No. 24,263.

EMIL OLSON, *Appellee*, v. ANDREW BEER and REGINA BEER,
*Appellants*.

Appeal from Trego district court, ISAAC T. PURCELL, judge. Opinion on rehearing filed December 8, 1923. (For original opinion see 112 Kan. 798, 212 Pac. 686.) Judgment of reversal adhered to.

*Herman Long,* of Wakeeney, and *J. E. Driscoll,* of Russell, for the appellants.

*John R. Parsons,* of Wakeeney, and *C. W. Burch, B. I. Litowich,* and *La Rue Royce,* all of Salina, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: A rehearing was granted in this case on a showing that appellants' abstract and brief were filed so late that appellee did not have sufficient time to prepare a proper counter abstract and brief at the time the case was submitted. Additional counsel for appellee were employed, and among other reasons for a rehearing suggested by the latter, it was intimated that the rights of appellee might be imperiled hereafter by the terms of our judgment reversing the case.

Touching the latter point, our opinion (Olson v. Beer, 112 Kan. 798, 802, 212 Pac. 686), declared:

"Otherwise than in these belated deliveries of wheat, there has been no breach of this contract. It is still in full force."

A page of words could hardly make this point more clear. The contract was declared to be "still in full force," which means that Olson's present and future rights under the contract are in no way prejudiced by his futile attempt to forfeit the contract in the proceeding now under review.

Passing to other matters now urged in behalf of appellee, it is suggested that no forfeiture had been declared by the trial court "but that an instrument in the nature of a mortgage had been foreclosed." The pleadings did not suggest anything of that sort, and the issues were not tried on that theory. It was an action to cancel a contract for the sale of a quarter of land on the grounds set out in our original opinion.

The contract spoke for itself. There was no obligation to pay 6,800 bushels of wheat in five years, nor in any other time than that

Olson v. Beer.

governed by the hazards and uncertainties of agriculture.  Defendant was to break 60 acres and plant wheat thereon the first year and deliver half the crop to plaintiff.  The next year and each succeeding year he was to plant 100 acres of wheat (not more than 110 acres) and deliver half the crop to plaintiff until the full consideration of 6,800 bushels of wheat had been thus delivered—6,800 bushels of wheat on half of 60 acres for one year and on half of 100 acres of Trego county land in four years!  The contract didn't say so; and no prudent person would make any such agreement.  The average annual yield of wheat for the entire state for the last 25 years has been about 12.50 bushels per acre (23d Biennial Report, State Board of Agriculture, 497) ; and the annual average for Trego county is much less (id. 475).  At the average state yield on the land which the defendant was required to plant each year, the aggregate yield for five years would be 5,750 bushels, and the deliveries to plaintiff of half that quantity could only have aggregated 2,875 bushels of wheat.  Perhaps the contract as interpreted by plaintiff could not be judicially declared to be impossible of performance, although there was not the remotest *probability* that it could be performed in five years; but the court sees no basis for the assumption or contention that it was to be performed in five years, and nothing to that effect should be imported into the contract to aid a forfeiture.

The plaintiff's case would be no stronger if the action had actually been tried on the theory of foreclosure, because there was no default except on the belated annual deliveries of wheat, and these defaults were waived.  If in fact the parties had intended to make a contract to be fully performed in five years, and the action was in foreclosure, it would have been necessary to have alleged facts which would permit a reformation of the contract so as to insert a due date in five years and to permit the defendants to take issue thereon.  Nothing to that effect or answering that purpose was done.  There was indeed some testimony pro and con on the question whether there was any oral understanding between the parties that the contract was to be fully performed in five years, and for some reason the plaintiff's testimony on that subject was admitted, while defendants' testimony to the contrary was ruled out.  Thus the counter abstract for appellee reads:

"Q.  Mr. Olson there has been some suggestion by counsel in this case that this statement written across the bottom of this contract was not taken into

consideration by you at the time you entered into this contract. Will you tell the jury whether it was or not?

"Counsel for appellant: I object to that question because an oral contract is completed in this. Because it is simply a written contract, not an oral one.

"The Court: Answer the question.

"A. Well, it certainly was.

"Q. Was it stated in that conversation as to when that contract was to terminate and when it was to begin, Mr. Olson? A. Yes.·

"Q. When was that? A. Five years from the date the contract was made. . . .

"Counsel for appellant: I move to strike out that evidence of the witness with relation to this written contract, because this is an attempt to pack an oral contract on a written contract; and also because it is an attempt to prove an oral contract not in issue here in these pleadings at all.

"The court: I overrule the objection."

The defendant also sought to testify on this subject, and the transcript reads:

"Q. Mr. Beer, was there anything said in that conversation about when the five years was to be up? A. No.

"Counsel for appellee: The contract says it was to be the 18th of February. It says five years from the date of the contract.

"The court: He may answer the question.

"Q. I will ask you whether or not anything was said about when the five years was to terminate?

"Counsel for appellee: I object. You cannot vary the terms of a written contract; and it is not proper cross-examination. And I object to it as leading and suggestive.

"Q. Was anything mentioned about the market when the price of the wheat should be collected?

"Counsel for appellee: I object to it.

"A. There was nothing said.

"Q. What, if anything, was said as to the interest?

"Counsel for appellee: I object. It is suggestive and leading. The contract speaks for itself.

"Q. Well now, what was said about it? What was said between you and Mr. Olson?

"Counsel for appellee: I object to it. The contract speaks for itself. He has already answered it.

"Q. What was said between you and Mr. Olson about that?

"Counsel for appellee: Iobject to that.

"The Court: Tell what the talk was about.

"Counsel for appellee: I object to the question. You cannot vary the terms of a written contract.

"The Court: That objection is sustained.

"Counsel for appellants: I want him to state the conversation between him and Mr. Olson at the time the contract was made.

"Counsel for appellee: I object to it. You cannot vary the terms of a written instrument.

"The Court: The objection is sustained. We will hold that the contract stands just as it was made."

These last rulings of the court were correct but the corollary thereto is that its earlier rulings when the same matter was elicited by plaintiff were necessarily erroneous.

It is also urged that the judgment entered against defendants for $7997.24 is only a judgment *in rem*. The record does not indicate this, but, even so, the judgment could not be upheld.

Another matter now raised is that defendants only planted 87 acres in the fall of 1920. That default was not pleaded. Moreover, if the contract was to be fully performed within five years, the full term would have expired in February, 1921, and defendants would have been under no obligation to plant any acreage to wheat in the fall of 1920 when it could not be grown, harvested and delivered before the alleged fixed term of the contract had expired.

The other matters urged on our attention by appellee have been carefully considered but require no discussion. Nor is it necessary to consider in detail the various errors urged by the appellants since judgment is being ordered in their behalf.

Judgment of reversal adhered to.

BURCH, J., not sitting.