MIFFLIN v. SHIKI.

No. 4952.   Decided November 18, 1930.   (293 P. 1.)

*Woolley & Holther* and *John C. Davis,* all of Ogden, for appellant.

*C. R. Hollingsworth* and *J. E. Evans,* both of Ogden, for respondent.

FOLLAND, J.

This is an action by a real estate broker to recover a commission on an exchange of real estate. The case was tried by the court without a jury. Judgment was rendered for defendant, and plaintiff appeals.

The material allegations of the complaint are that on or about Februry 25, 1928, defendant employed plaintiff as a broker to procure a purchaser for certain real estate then owned by defendant at a price of not more than $13,000 if property was taken in exchange, and not more than $12,000 if sold for cash, and agreed to pay plaintiff for his services in procuring such purchaser a commission equal to 10 per cent of the selling price, pursuant to a listing agreement, a copy of which was attached to the complaint as an exhibit, which is as follows:

"This agreement, made this *25* day of *Feb. 1928,* by and between *B. Shiki of Cornnie, Boxelder* County, *Utah,* first party and *John M. Mifflin* of *Ogden, Utah,* second party, witnesseth:

"First party hereby appoints second party *as* agent to find a buyer for the following described real estate belonging to first party, situate in *Boxelder* County, *Utah*, to wit:

"Section *1*, Township *9*, Range *3 West S. L. M.* Meridian, the purchase price to be not more than *13000.00 or 12000 cash* Dollars, payable *$3,000.00 Pay Down on Place $6000.00 Federal Land Bank Balance at 7 pr cent.* And in consideration of his said appointment as *J. M. Mifflin* agent the second party agrees that he will advertise the land for sale, show the same to prospective buyers and in other legitimate ways search for a buyer for the said premises all expenses incurred therefor to be paid by second party. The term of this agreement is for a period of *12* months from date hereof and thereafter until *Sold 30* days notice in writing is given of the withdrawal of said lands from *John M. Mifflin* hands. If a buyer is found by said *John M. Mifflin* for said land or if it is sold, during the time this agreement is in force *I* will pay a commission equal to *10 pr cent* per cent of the selling price. Present owner will furnish abstract of title in case of sale. Details regarding the land are on the other side of this card.

"<em>B. Shiki.</em>"

Endorsement as follows:

"Name *B. Shiki Cornnie Boxelder County Utah* No. acres *142*, Price *$12000.00 Cash or Trade $13000.00* Terms, *$3000.00 Paid on transfer Mortgage on Balance at 7 pr cent on second mortgage,* ~~Legal Description;~~ Acres Cultivated *92 acres* Acres Fit only for Pasture *50* Acres Orchard *non* Acres Lucern *55* Water Right *Bariver Utah Idaho Suger Co.* Description of Buildings *Frame House Chicken House, Barn, Garage.* Mortgage.... Amount *$6000.00 When Due?.....* Name of Mortgage Co. *taxes $158.96* Character of Soil *Watter assment $37.55* Any Gravel? *No.* Note *taxes $158.96 Watter Assment $37.55*"

(We have italicized the written insertions on the printed form.)

That plaintiff made diligent efforts and search for prospective buyers and found and procured as purchasers one Martin and wife, who were ready, able, and willing to purchase at the exchange price by exchanging or transferring for the same certain real property owned by them; that the defendant thereupon sold said premises to Martin and wife in exchange for the real property of the Martins; and that the parties entered into a contract for the exchange

of properties, copy of which contract was attached to the complaint.

These allegations were denied by the answer. It was alleged in the answer that defendant was a Japanese, unable to read or write the English language, and if he signed any contract of employment of the plaintiff, it was for a cash sale and not for an exchange of properties, and for a 5 per cent commission instead of 10 per cent commission as alleged. Defendant admitted that an agreement had been entered into between him and the Martins for the exchange of their respective properties. This agreement included not only real estate, but also considerable personal property located on the respective farms. At the time of trial the evidence disclosed that the Shikis had moved onto the Martin place, and the Martins had moved onto the Shiki place, but that the deeds to the respective places had not been delivered nor the trade consummated because of some defect in the title to the Shiki property.

The case turns on the interpretation to be given the contract of employment of the broker. Plaintiff's contention, as indicated in his complaint, is that the contract provides for a commission to be paid upon an exchange of the property therein referred to, for other property. He contends that the indorsements on the back of the listing agreement are to be considered as part of the contract, and that the contract construed as a whole with the indorsements an integral part thereof, provides for a commission to be paid upon an exchange of property. As an alternative, he urges that if this does not clearly appear, then the contract, with respect to the terms of sale or exchange, is ambiguous because of the apparent conflict between the terms of sale stated on the face of the contract with the language respecting the terms of sale on the back thereof. That is to say, on the face of the contract two prices are mentioned, "13000 or 12000 cash" followed by details of a deferred payment plan. By a fair interpretation, the lesser price may be assumed to be the all cash price, and the higher price the

deferred payment or credit price on a money basis. The reverse side of the card mentioned "$12000 cash or trade $13000," which might fairly be taken to mean $12,000 for sale on a money basis, or $13,000 as the price in case of an exchange. An element of uncertainty, ambiguity, and indefiniteness is injected into the contract by the inclusion of the expression "in trade," which appears on the back of the card, while there is no ambiguity arising from the language on the face thereof. Because of this patent ambiguity, plaintiff says that the court should have admitted parol testimony to explain the language of the contract for the purpose of clarifying the inconsistencies between the two statements.

The trial court first undertook to hear parol testimony, but afterwards struck this testimony and concluded that the contract, while properly drawn, yet by application of rules of construction clearly expressed the purpose of the parties to effect a sale either for cash on the basis of $12,000, or with a partial cash payment, assumption of the mortgage, and deferred payments for the balance at 7 per cent, on the basis of $13,000 and that it was not the intention of the parties that a commission be paid upon an exchange of the listed property for other property. The troublesome factor is the indorsement on the back of the card of the words "in trade." The trial court proceeded upon the theory that the indorsement upon the back of the card was part of the contract, and in construing it applied the rule that where there are two repugnant provisions in a contract, the first will control and the last will be rejected. 6 R. C. L. 847, § 236. The fact that the provision causing the ambiguity was an indorsement upon the back of the agreement, and not upon its face over the signature of the party to be charged, makes the application of this rule especially pertinent. *The Leader Co.* v. *L. R. Ry. & El. Co.*, 120 Ark. 221, 179 S. W. 358.

The rejection of the provision on the back is justified by the additional reason that the reference made in the

contract immediately above the signature of the defendant is as follows: "Details regarding the land are on the other side of this card." This is the only reference in the agreement to any indorsements on the reverse side. The indorsements there referred to are assumed by the defendant and made a part of the contract, but only to the extent specified over his signature. *Glant* v. *Lloyd's Register of Shipping*, 141 Wash. 253, 251 P. 274, 252 P. 943; *Olson* v. *Beer*, 112 Kan. 798, 220 P. 1021; *Guerini Stone Co.* v. *Carlin*, 240 U. S. 264, 36 S. Ct. 300, 60 L. Ed. 636. The contract was made on a printed form with blanks left to be filled in writing. On the face of the agreement the land was described by a general reference to the section wherein it was situated, while on the reverse side were blanks to be filled, and which were filled, with details regarding the acreage, the acres cultivated, acres fit for pasture, and description of the buildings on the place. These "details regarding the land" are the only parts of the indorsements contained on the reverse side of the card, which are by specific reference made a part of the agreement. The reference to one class of details, without inclusion of more, implies the exclusion of all not expressed, under the rule of Expressio unus, exclusio alterius. 13 C. J. 537.

The court was justified in rejecting the terms of sale contained on the reverse side of the card for the further reason that the contract is complete and reasonably clear without it, and becomes ambiguous and uncertain only when it is sought to incorporate the indorsement on the back. The listing agreement was perpared by the plaintiff, on a printed form furnished by him. He testified that all the writing placed in the blanks was written by him. In interpreting the contract, therefore, it must be construed most strongly against him. 13 C. J. 545. The trial court therefore committed no error in refusing to admit parol testimony for the purpose of interpreting the contract, and in looking alone to the terms of the agreement over defendant's signature for the true intent of the parties.

Neither did the court err in considering the contract as being one for sale rather than for an exchange, and that the commission of 10 per cent (which is much higher than the usual commission charged by real estate brokers for such service) was payable to the broker only upon procuring a purchaser for a money consideration. The various terms used in the contract clearly indicate that a sale rather than an exchange is contemplated. For example, first party hereby appoints second party agent to find a *buyer;* the *purchase price* to be; second party agrees that he will advertise the land *for sale;* show the same to prospective *buyers* and in other legitimate ways search for a *buyer;* if a *buyer* is found; or if it is *sold,* will pay a commission equal to 10 per cent of the *selling price.*

A moment's reflection will convince one that a court would find considerable difficulty in determining the "selling price" under an exchange agreement such as that alleged in the complaint. There is nowhere in said exchange agreement anything to indicate the value of the respective properties. The exchange includes not only the real estate, but considerable personal property, such as live stock, farm implements, hay, etc. The Shiki land was incumbered by a $6,000 mortgage, and the Martin place by a $1,500 mortgage. The testimony was that the Shiki place was worth $13,000 in trade, and that the Martin land, of which there was between 20 and 21 acres, was worth between $400 and $500 per acre.

The law applicable to the facts in this case has been well stated in *Watson* v. *Odell,* 58 Utah 276, 198 P. 772, 775, 20 A. L. R. 280, wherein it was said:

"A sale is ordinarily understood to mean a transfer of property for money."

And, quoting from the syllabus of this case in 20 A. L. R. 280:

"A broker contracting to sell real estate for a specified sum for a stated commission is not entitled to a commission upon producing

a customer with whom, after negotiation, the owner enters into a contract of sale on different terms, where it is not shown that he was ready, able, and willing to purchase on the terms stated in the original contract; at least, where the contract between buyer and seller was merely executory, and was never performed, because conditions could not be complied with."

See also *Williamson* v. *Berry*, 8 How. 495, 12 L. Ed. 1170; *Thompson* v. *Alley*, 77 Colo. 598, 238 P. 62.

In *Leicht-Benson Realty & Const. Corp.* v. *Stone*, 138 Va. 511, 121 S. E. 883, 885, 43 A. L. R. 1100, the facts are similar to those in the instant case. There the contract provided for payment of a commission to a broker upon sale of the property for a specified price. The broker exhibited the property to prospective purchasers, and later the owner effected an exchange of the property with a person introduced by the broker. The court said:

"The governing principle in this class of cases is clearly and succinctly stated in the syllabus by the court to *Parker* v. *National Mut. Bldg. & L. Ass'n*, 55 W. Va. 134, 46 S. E. 811, as follows: 'Under a special contract between an owner of real estate and an agent for the sale thereof, on commission, at a price agreed upon, the agent cannot recover his commission without proving that he has actually made a sale at the price stipulated, unless it appear that his principal has wrongfully prevented the making of a sale at such price, which would have been made but for his interference, or has waived the strict performance of the contract.'

"Applying these principles to the facts of this case, we find nothing to indicate that the owner ever modified its contract with the broker, or ever conferred any authority whatever except authority to sell the property for $14,000. Nor do we find that the owner either wrongfully or otherwise prevented the making of such a sale at such a price, nor do we find anything from which it can be inferred that the owner has ever in any way waived the strict performance of its contract with the broker."

The contract was in writing and provided a commission to be paid the broker for the sale of the property for money, either cash down or on deferred payments at the price of $13,000. The action is on the contract. The court found, and there is ample evidence to sustain the finding, that the plaintiff did not procure a purchaser

for defendant's land ready, able, and willing to pay the purchase price specified in the listing agreement. It may be that a broker such as plaintiff, after having introduced parties who have effected an exchange instead of a sale, should be entitled to recover something for his services. It would be an easy matter for brokers to draw their contracts of employment so as to specifically include a sale of a part or all of the property described, or to provide for a commission in the event of an exchange for other property. Under the provisions of Comp. Laws Utah 1917, § 5817, contracts of this character are required to be in writing, and it is not possible for the courts to enlarge the terms of, or to create new provisions in, such contracts so as to protect brokers who have performed some services which would ordinarily entitle them to compensation if so provided in the contract, where the contract of employment as drawn does not permit a recovery.

JUDGMENT AFFIRMED, with costs.

CHERRY, C. J., and STRAUP, ELIAS HANSEN, and EPHRAIM HANSON, JJ., concur.