246 P.2d 189

CAMERON v. SISSON.

No. 5551.

Supreme Court of Arizona.

July 15, 1952.

Carl W. Divelbiss, of Phoenix, for appellant.

Wilson & Towner, of Buckeye, for appellee.

DE CONCINI, Justice.

Appellant, Gordon Cameron, hereinafter referred to as plaintiff, brought suit against E. L. Sisson, appellee herein and defendant below, in June 1950, for the balance due him on a promissory note and for $400 on an open account.

Plaintiff is a well-driller. Defendant is engaged in farming near Gila Bend, Arizona. During 1948, plaintiff drilled and cased two wells for defendant, which wells are referred to as wells #3 and #4. The latter was completed by the plaintiff in March of 1948 to a depth of 835 feet and was cased with a 20-inch steel casing. On June 2, 1948, defendant owed plaintiff $240 on well #3 and $6520 on well #4, wherefore he executed a promissory note to the plaintiff for $6760 payable in six months. Defendant, to the date of trial, paid $1200

on this note. After completion of well #4, defendant installed a pump and pre-irrigated the land which later was used to grow cotton. The water was sweet and good. When he started to irrigate his land in May or June the water turned salty and much sand and large gravel was discharged through the pump. Defendant however continued to use the pump to irrigate his land with the water from well #4 until September 1948, the end of the cotton season. In May of 1949 defendant hired Billy Dunlap, another driller, to clean the #4 well. The pump was pulled by Dunlap and it was discovered that the tail pipe and screen, total length 13 feet, were missing. There is no evidence as to when they dropped off, so it is only a matter of conjecture as to what depth in the well they came to rest. At that time the well had filled up with sand and gravel to the 190-foot level. Billy Dunlap cleaned the well the first day he worked, but the depth to which it was cleaned that day was not shown. On his return the next day the well had again filled up to the 190-foot level. Dunlap worked on the well a day and a half. Plaintiff's theory is that Billy Dunlap in his efforts in cleaning the well, caused the casing to separate, while defendant's theory is that the casing separated before the advent of Billy Dunlap, because the well had filled up to the 190-foot level where the casing was later proved to be separated. Defendant also maintains that the casing separated because of improper welding by plaintiff. There is no evidence that Billy Dunlap's work caused the casing to separate except surmise. The casing may have been separated at the time Dunlap worked on the well.

Defendant testified he didn't say anything to plaintiff about his well being bad until the Spring of 1949 when Dunlap went into the well. Defendant testified that after plaintiff drilled well #5 for him in June 1949, he asked plaintiff "to set his rig over the hole, clean the hole out, and recover the well, and I would pay all his expenses." Plaintiff denied responsibility and said he wasn't interested in it. Plaintiff's witnesses testified the well could have been saved if handled properly.

In January 1950 defendant had the casing pulled and found it to be separated at 190 feet. He made no more payments on the note because he claimed that the well was worthless because of faulty installation of the casing.

The trial court rendered judgment for the defendant on both of plaintiff's causes of action, and plaintiff appeals to this court from that judgment. The trial court made no findings of fact or conclusions of law so we are at a loss as to the grounds on which plaintiff's claim was denied.

Plaintiff assigns seven errors and predicates his first four on the first cause of action, stating that in this case, failure of consideration is no defense, and, even if it is available as a defense it was not sufficiently proven by the defendant.

The defendant relies on three propositions of law:

1. That the defense of failure of consideration is available against one who is not a holder in due course such as plaintiff in this case.

2. That there is an implied warranty that defendant was to get a well that would be fit for the purpose designed.

3. The doctrine of estoppel and laches are inapplicable here because defendant did not make any payments on the note after June 1949, when he first learned the well could not be used.

In the case of Vancouver National Bank v. Katz, 142 Wash. 306, 252 P. 934, 937, it is stated:

"As between the maker and the payee, a promissory note is but a simple contract to pay money. It is obligatory only on the same terms and conditions that other simple contracts of a like purport are obligatory. It may be defended against for want of consideration, for fraud and deceit, and for any of the other causes which will void simple contracts."

See also Roberts v. Boydston, 186 Okl. 336, 97 P.2d 898. There is no question but that the consideration for the note that the defendant executed in favor of the plaintiff was a completed well with properly installed steel casing. To see if that consideration was fulfilled by the plaintiff we need only look to the evidence in this case.

Where a failure of consideration is alleged, the burden is on the defendant to show by a preponderance of the evidence the fact of that failure and the extent thereof. Howell v. Tomlinson, 33 Tenn.App. 1, 228 S.W.2d 112. So where plaintiff has made a prima facie case, the burden of going forward with the evidence to show failure of consideration is on the defendant. Oppenheim v. Barnes, 193 Okl. 236, 144 P.2d 446; Shepherd v. Hunt, 43 Cal.App. 630, 185 P. 677. We think the defendant sufficiently went forward with the evidence so as to show, in this case, a partial failure of consideration. The uncontradicted testimony of two qualified welders was to the effect that the welds which were made by the plaintiff on the casing which was installed in well #4 were made in an unworkmanlike manner, so that the welded casing joints were not reinforced to such an extent that they would hold together. There was evidence from which the lower court could *infer that the casing came apart because of poor welding*. The evidence established that these welds may have been the proximate cause of the separation of the casing and the filling up of the well to within 190 feet of the top of the ground. The trial court no doubt reasoned that there was a lack of consideration moving from plaintiff to defendant for the balance due on the note. The defendant paid $1200 on the note, which note included $240 due on well #3. The trial court did not give judgment to defendant for such payment on the note, which it should have done if there was a

total failure of consideration. Apparently the trial court considered plaintiff was entitled to recover his $240 due on well #3, and the balance of $960 paid by defendant. No doubt the trial court reasoned, that was a just charge against defendant for the latter's use of well #4 in growing his 1948 cotton crop; the court's conclusion being, there was only a partial failure of consideration.

Our statute 52–123, A.C.A. 1939, states:

"Absence or failure of consideration is matter of defense as against any person not a holder in due course, *and partial failure of consideration is a defense to the extent of the failure,* whether ascertained and liquidated, or otherwise." (Italics ours.)

This above-quoted statute then gives strength to the trial court's implied finding that here there was a partial failure of consideration.

■ The plaintiff lays stress on the proposition that the defendant did not prove an expense or implied warranty so that the plaintiff should be held liable for the damage that resulted. We agree there was no express warranty, however, an implied warranty did arise. It is incumbent upon a contractor who undertakes to build a structure or as in this case, a well, to do so in a manner befitting a skilled well-driller. Newlee v. Heyting, 167 Or. 288, 117 P.2d 829. From the testimony in the instant case it can reasonably be inferred that plaintiff had not drilled the well in a workmanlike manner.

■ Plaintiff's other assignments of error which go to the first cause of action is, even though there was a failure of consideration, that by reason of laches the defendant is now precluded in setting up failure of consideration as a defense. This argument is without merit because he offered to pay plaintiff in the Spring of 1949 to go in and recover the well, which plaintiff refused to do. Then in January 1950 he had the casing pulled and for the first time discovered, as he contends, that the casing separated because of poor workmanship on the part of the plaintiff by making improper welds. Viewing the facts in the light most favorable to support the judgment, we cannot say the lower court was in error when it found no laches on the part of the defendant.

■ Plaintiff's remaining assignment of error deals with his second cause of action. As explained supra, plaintiff in June of 1949 commenced work on well #5 and was paid all but $400 of it by the defendant; defendant contends that his payment of January 4, 1950, in which he gave the plaintiff $500, discharged the open account on well #5. The well-settled rule is that where payment is given to a creditor on more than one account by his debtor, he may direct to which account he desires a particular payment to apply, but if at the time of paying the money he fails to make any such direction, the creditor has the right to apply

the payment as he sees fit. Webb v. Crane Co., 52 Ariz. 299, 80 P.2d 698. Valley National Bank v. Shumway, 63 Ariz. 490, 163 P.2d 676. Defendant on direct examination testified that when he made the payments to the plaintiff he did not make any direction as to how the payments were to be credited. Therefore, by the defendant's own testimony it is clear that the lower court erred in not giving judgment to the plaintiff on his second cause of action.

Judgment is reversed as to the plaintiff's second cause of action, with direction to the lower court to give judgment to the plaintiff as prayed for, together with his costs both in the trial court and on this appeal. Judgment of the lower court on the first cause of action, however, is affirmed.

UDALL, C. J., and STANFORD, PHELPS, and LA PRADE, JJ., concur.