248 P.2d 866

CENTRAL HOUSING INV. CORP. v. FEDERAL NAT. MORTG. ASS'N.

Nos. 5500–5503.

Supreme Court of Arizona.

Oct. 9, 1952.

Knapp, Boyle, Bilby & Thompson, and Arthur Henderson, Richard Evans, of Tucson, for appellant.

Hall, Catlin & Molloy, of Tucson, for appellee.

DE CONCINI, Justice.

The sole question on this appeal is whether evaporative house coolers placed on mortgaged property subsequent to the execution of the mortgage are subject to the mortgage on foreclosure.

The facts are undisputed, hence there is only a question of law to decide.

In 1947 the Del Webb Construction Company built 700 houses as a post-war housing project known as Pueblo Gardens, south of Tucson, Arizona. The construction company built the houses but the ownership of the land and the improvements was in other corporations owned by the Del Webb in-terests. The construction was financed by mortgages on the individual improved lots, insured by the Federal Housing Administration, the notes and mortgages being in form required by F.H.A. and were financed through an Arizona insurance and realty company. Federal National Mortgage Association, commonly known as F.N.M.A. or "Fanny May", appellee herein and plaintiff below, as transferee of all the mortgages, brought a series of foreclosure actions against Central Housing Investment Corporation, record owner of the mortgaged premises, and hereafter referred to as appellant.

The unsold houses turned into a rental project. The Del Webb companies conveyed their interest in the unsold houses to the appellant, Central Housing Investment Corporation, subject to the existing F.H.A. mortgages.

The houses in the project were built of frame construction, and, although the walls were well-insulated, cooling was desirable. Under F.H.A. regulations the construction company had installed the required plumbing, electrical connections and duct work into each house for the purpose of installation of an evaporative air-cooler. It, however, did not require that coolers be installed in the houses to qualify them for F.H.A. insured mortgages.

In order to run a successful rental project the defendant installed 70 evaporative coolers at a cost of $7,000, payable in installments. The defendant later purchased

twelve additional coolers, each at $100 to $115 cash, making a total of 82 coolers owned and used by the appellant corporation on the rental project. The appellant leased the houses both by written term leases and on a month to month basis. Appellant leased coolers separately, however, and charged a small monthly rental for the coolers themselves, separate and apart from the rental charges for the houses.

Besides the legal description the mortgage in question carried a provision describing the mortgaged property as *"including all buildings and improvements now or heretofore located thereon, and all heating, plumbing and lighting fixtures and equipment now or hereafter attached and used in connection with the premises herein described."* The defendant in the foreclosure action admitted all of the allegations of the foreclosure complaint except the general allegation that its interest or claim upon the property was subordinate in all respects to the lien of the first mortgage, and in that connection alleged that it was the owner of the evaporative coolers and entitled to the rent therefrom as long as the tenants remained in possession of the premises under the lease agreements, and to possession of the coolers thereafter, as its own property. The appellant, in the lower court, made a motion to have the receiver in the foreclosure action pay over to the defendant all rents received from the use of the coolers. The trial court denied the motion and thereafter rendered a judgment, holding that whatever right, title or interest the appellant had in the coolers was subordinate to the plaintiff's mortgage lien. An appeal was taken from that part of the judgment and by stipulation all of the foreclosure actions (our numbers 5500–01–02–03) were were consolidated for the purpose of this appeal.

The appellant assigns as error the ruling of the trial court in holding that the evaporative coolers in question were fixtures, and as fixtures became part and parcel of the realty and therefore were subject to the plaintiff's mortgage lien.

It is the appellant's contention that, (1) the coolers were not fixtures as a matter of law, or (2) even if they be fixtures as a matter of law, that the realty mortgage in question excludes these coolers as being subject to the mortgage lien.

The F.H.A. form of mortgages in question provide that the mortgage is a lien upon the real property and improvements erected thereon and upon

"all heating, plumbing, and lighting fixtures and equipment now or hereafter attached to or used in connection with the premises herein described."

It is appellant's contention here that the doctrine "expressio unius est exclusio alterius" applies, and that, therefore, the specific enumeration of heating, plumbing and lighting equipment excludes by legal implication cooling or refrigerating equipment. Restated, the doctrine of "expressio unius"

is that the expression in a contract of one or more things of a class, implies the exclusion of all things not expressed, although all would have been impliedly included had none been specifically expressed. The reason for the rule is that specific provisions more exactly express the intent of the parties than do general provisions.

As early as 1833 in the case of Hare v. Horton, 5 B. & Ad. 715, 110 English Reports 954, which is analogous to the case at bar, the English court applied the doctrine of "expressio unius". The mortgage in that case was on the dwelling houses, foundries and other premises, "together with all grates, boilers, bells, and other fixtures in and about the two dwelling houses and the brewhouses thereunto belonging." It was held that although without those words the fixtures in the foundries would have passed, yet, by the use of those words, the fixtures intended to pass were confined to those in the dwelling houses and brewhouses. The case of Denver Joint Stock Land Bank v. Markham, 106 Colo. 509, 107 P.2d 313, cited by appellant in its brief, is also illustrative of the application of the doctrine of "expressio unius". Suffice it to say, the doctrine is still in wide use in this country and the courts of many states, including Arizona, have recognized it in construing statutes and contracts. Forsythe v. Paschal, 34 Ariz. 380, 271 P. 865; O'Malley Lumber Co. v. Martin, 45 Ariz. 349, 43 P.2d 200; Berne v. Stevens, 67 Mont. 254, 215 P. 803; Mifflin v. Shiki, 77 Utah 190, 293 P. 1.

It is appellee's contention, however, that the word "improvements" used in the F.H.A. mortgages includes all legal fixtures and that these coolers, being fixtures as a matter of law, are subject to the mortgage lien of the plaintiffs just as the heating, lighting and plumbing equipment are. However, appellee does not give any meaning to the words "all heating, plumbing and lighting fixtures." There is then an inconsistency between the general provision "improvements", and the specific provisions "all heating, plumbing and lighting fixtures". If the word "improvements" as appellee contends means "all fixtures", then the specific provisions relating to heating, plumbing and lighting fixtures are mere surplusage and are meaningless. It is a well-recognized rule of law, that where there is an inconsistency in a contract, the specific provisions qualify the meaning of the general provisions. Tyson v. Tyson, 61 Ariz. 329, 149 P.2d 674. It is also a well-established rule in this jurisdiction that a contract is to be construed most strongly against the party who prepared it. Hoover v. Odle, 31 Ariz. 147, 250 P. 993; Gardner v. Trigg, 59 Ariz. 397, 129 P.2d 666; Covington v. Basich Bros. Construction Co., 72 Ariz. 280, 233 P.2d 837. If the word "improvement" had been used alone then appellee's argument would have some merit; but when it is used in connection with specific types of fixtures the word is qualified to that extent and the doctrine of "expressio unius est exclusio alterius" applies.

312

 Counsel have submitted exhaustive briefs covering their respective contentions. They each cite a line of cases to prove that "coolers" by analogy are "fixtures" or that they are "not fixtures". We see no reason to treat that phase of the case because we have decided that the rule of "expressio unius" is applicable and controls our construction of the mortgages.

From the nature of the original transaction it is clear that there was no reliance by the mortgagee that coolers would be installed on the houses even though space was provided therefor. The completed houses were to be sold to individual buyers without coolers and the buyers may or may not have installed coolers. The houses when sold included "heating, plumbing and lighting fixtures", and also included duct work to house a cooler which an owner might install. While the installation of coolers was contemplated yet the mortgage stated that it was a lien on "specific types of fixtures enumerated"; certainly that gave the mortgagees notice that the coolers in question were not to be a component part of the house so that it would be subject to the mortgage lien. The creation of a rental project was an afterthought as a method of salvaging an investment, since the houses in the project were not selling. The defendants charged a small rental for the coolers which was separate and apart from the moneys received from the rental of the houses.

The judgment of the trial court is reversed with directions to enter judgment for the appellant, returning to the appellant the evaporative coolers as appellant's property free and clear of the lien of appellee's mortgage.

Reversed with directions.

UDALL, C. J., and STANFORD, LA PRADE, and PHELPS, JJ., concurring.