341 P.2d 923

**H. F. VOIGHT and Julia Voight, his wife; and Lloyd Fuller, d. b. a. Lloyd Fuller Building Company, Appellants,**

v.

**James B. OTT and Marilyn J. Ott, his wife, Appellees.**

No. 6465.

Supreme Court of Arizona.

July 8, 1959.

Riley & Sullivan, Tucson, for appellants.

Botsford & Turner, Scottsdale, for appellees.

LAURENS L. HENDERSON, Superior Court Judge.

This is an appeal from a judgment rendered in favor of appellees, James B. Ott and Marilyn J. Ott, his wife, (plaintiffs) against appellants, J. F. Voight and Julia Voight, his wife, and Lloyd Fuller, doing business as Lloyd Fuller Building Company, (defendants), in the amount of $2126 as damages for breach of an implied warranty on account of a defective combination refrigeration and heating system in a resi-

dence property sold by defendants, as vendors, to plaintiffs, as purchasers.

The facts disclose that in the summer of 1954, defendants built a model home in Phoenix which was used for the purpose of selling therefrom to prospective customers similar houses on lots owned by defendants. During this display period of several months the house was not being offered for sale. In December, 1954, or January, 1955, plaintiff, James B. Ott, in response to a newspaper advertisement, went to look at the model home. He and his wife examined it several times. On his first visit plaintiff James B. Ott inquired of the real estate agent who was showing the house about the price of the house and about the type of heating and cooling system, and on that visit plaintiff was handed—by some unidentified person at the model home—a brochure which described the heating and cooling system then installed in the house. The brochure depicted the benefits of year around air conditioning and stressed the advantages of this particular type of system in comparison to other systems of air conditioning. According to the brochure, the system in question was called the "Catalina", and it emphasized its "zone control" features, which meant that blowers in different parts of the house could be operated separately by turning on and off heating or cooling in the different areas of the house if the occupant so desired, thus supposedly resulting in a less expensive operation. The brochure otherwise made no special mention of the separate equipment items of the air conditioning system. The word "system" was used repeatedly throughout the brochure.

The various component parts of this system had been purchased by defendants directly from Drayer-Hanson, Inc. at Los Angeles and the system was installed when the house was built. The compressor part of the system was located in the carport, and the water tanks and pumps and the refrigeration and heating unit were located in the attic of the house and in a closet of the house, respectively, and as plaintiff James B. Ott testified, all the various parts of the system were connected by pipes and wires built in the house as an integral part thereof and necessary for convenient living.

On January 27, 1955, plaintiffs made an offer to purchase the model home, through the real estate agency, and pending close of the purchase thereof, plaintiffs entered into a rental agreement with the sellers, as a result of which the plaintiffs moved into the home on or about February 11, 1955. Thereafter the purchase and financing plans were concluded and plaintiffs acquired a deed to the property from defendants, which deed was recorded May 20, 1955.

There was no separate bill of sale or other instrument specifically referring to or purporting to pass title to the air conditioning system or any part thereof. The deed was in the usual form of a warranty deed

conveying title to the lot on which the home was located, and no mention was made therein of any other item of property.

A few days prior to moving into the home, the plaintiffs inspected the house and found the heating system pump motor was in need of repair and this was accomplished before the plaintiffs moved into it. Thereafter, the heating system worked satisfactorily, and in May, 1955, the defendant Fuller came out to the home and changed over the system from heating to refrigeration. After the refrigeration commenced to operate in May, it continued to work "after a fashion" but would heat up and shut itself off. Plaintiffs contacted defendant Fuller who procured and referred a Mr. Good to plaintiffs to service the defective system. Mr. Good put in a larger water valve. Then water in the pipes in the heating unit froze and the pipes burst. This happened because the water in those pipes which lay close to the cooling coil had not been drained prior to turning on the cooling and a proper operation of the system required such drainage. It was testified that had such been done, it would have been impossible for the pipes to burst. A refrigeration expert testified that the system did not heat because the heating pipes had been cut off from the system. This occurred when and because the pipes froze. Plaintiffs testified the system never cooled satisfactorily.

During the summer plaintiffs requested defendant Fuller to fix the heating system, but this was not done and in November the heating system still was not working. At that point the plaintiffs had the air conditioning unit removed and the system revamped and a Chrysler Air Temp system installed at a cost of $2,126. Nothing was done with those component parts of the original system which were removed, although plaintiff James B. Ott testified he had an opportunity to sell the pump. Plaintiffs sued defendants for breach of implied warranty and the trial court made findings of fact and conclusions of law and awarded plaintiffs damages in the sum of $2,126.

Plaintiffs pursued the theory in the lower court that there was an implied warranty under the statute as contained in the Uniform Sales Act (now A.R.S. § 44-215). It is the contention of defendants that as between vendor and purchaser a refrigerated air conditioning system and heating unit in residence property is built into the house as an integral part thereof and necessary for the convenient living of the occupant and is an accession to the realty; further, that being realty, any rule of law as to implied warranties is inapplicable. Basically, therefore, the question before us is whether such an item is a fixture or remains personalty and subject to the implications of warranty attributable thereto.

132

It is the general rule of law that implied warranties as to quality or condition do not apply to realty. Allen v. Reichert, 73 Ariz. 91, 237 P.2d 818. If the item in question be realty, then there is no implied warranty applicable thereto. If the item be personalty, then the provisions of the statute as to implied warranties is made applicable and this is what the lower court held in finding that the sellers (defendants) breached their implied warranty as to the property in question.

A "fixture" is defined in 36 C.J.S. Fixtures § 1, Definition and Nature and Requisites of Conversion into Realty in General, p. 890, as follows:

"* * * By the great weight of authority, however, a fixture is a thing which, although originally a movable chattel, is, by reason of its annexation to land, regarded as a part of the land. In some jurisdictions statutes affect the question as to whether or not particular articles are fixtures under given circumstances.

"Fixtures belong to that class of property which stands on the boundary line between the two grand divisions of things real and things personal, into which the law has classified property. In its ordinary signification the term 'fixture' is expressive of the act of annexation; it necessarily implies something having a possible

existence apart from realty, but which may, by annexation, be assimilated into reality, and denotes the change which has occurred in the nature and legal incidents of the property. They partake of the character, incidents, and properties of realty, and belong, in the ordinary case at least, to the person or persons owning the land; and, as appears infra §§ 21–22, ordinarily may not be severed and removed without the consent of the owner. * * *"

This court has laid down the test for determining whether a chattel is a fixture. The rule is stated in Fish v. Valley Nat. Bank of Phoenix, 64 Ariz. 164, 170, 167 P.2d 107, 111, as follows:

"* * * The mere affixing of personal property to real estate may or may not cause it to lose its personal characteristics. It may retain its identity as a chattel personal and not become a chattel real. The rule is that for a chattel to become a fixture and be considered as real estate, three requisites must unite: There must be an annexation to the realty or something appurtenant thereto; the chattel must have adaptability or application as affixed to the use for which the real estate is appropriated; and there must be an intention of the party to make the chattel a permanent acces-

sion to the freehold. * * * 36 C.J.S. Fixtures § 1, p. 892."

Seemingly, the general course of modern court decisions is against the common-law doctrine that the mode of annexation of a fixture is the criterion, and is in favor of declaring all things to be fixtures which are attached to the realty with a view to the purposes for which it is held or employed. This has led to the formulation and recognition of the foregoing test. 22 Am. Jur., Fixtures, § 3.

■ The rule as set forth above is followed in the absence of an agreement between the parties which would otherwise determine the character of the item. The parties may, as between themselves, by agreement determine that items of personal property shall be considered as a part of the realty. Central Housing Inv. Corp. v. Federal Nat. Mortg. Ass'n, 74 Ariz. 308, 248 P.2d 866; City of Phoenix v. Linsenmeyer, 78 Ariz. 378, 280 P.2d 698, 52 A.L.R. 2d 219; Hill v. Salmon, 69 Wyo. 1, 236 P.2d 518; Guardian Life Ins. Co. of America v. Swanson, 286 Ill.App. 278, 3 N.E.2d 324. In this connection, it is to be noted that where an agreement between the parties enumerates certain items of personal property to be considered as realty, it normally will be considered to exclude as realty other chattels not specifically enumerated. Central Housing Inv. Corp. v. Federal Nat. Mortg. Ass'n, supra.

Plaintiffs contend the Central Housing case, supra [74 Ariz. 308, 248 P.2d 867], held as a matter of law that evaporative coolers were not fixtures. Such was not the decision in that case. The case involved the sole question of whether evaporative coolers placed on mortgaged premises subsequent to the execution of the mortgage were subject to the mortgage on foreclosure proceedings. The mortgage agreement in that case included the realty and improvements thereon and "all heating, plumbing, and lighting fixtures and equipment now or hereafter attached to or used in connection with the premises herein described." Cooling or refrigeration equipment was not mentioned in the mortgage. This court held that the rule of "expressio unius est exclusio alterius" applied and that the specific enumeration in the mortgage of heating, plumbing, and lighting equipment excluded by legal implication any cooling or refrigeration equipment, and, hence, the coolers were not covered by the realty mortgage. This court went on to say:

"* * * Restated, the doctrine of 'expressio unius' is that the expression in a contract of one or more things of a class, implies the exclusion of all things not expressed, although *all would have been impliedly included had none been specifically expressed*. The reason for the rule is that specific provisions more exactly express the

134

intent of the parties than do general provisions." (Emphasis supplied.) 74 Ariz. 310, 311, 248 P.2d 867.

In the instant case, there was no mention made of the refrigeration or heating system or any portion thereof in any agreement or in any instrument whatsoever pertaining to the sale or conveyance of the residence property, and there was no separate agreement pertaining to such air conditioning system or any part thereof. In the absence of an agreement between the parties respecting fixtures, therefore, the answer to the question of whether an air conditioning system (heating and refrigeration) is a fixture or remains personalty depends upon the facts and circumstances attending each particular case, the relationship between the parties and the application of the test (aforesaid) as to annexation, adaptability and intention.

■ The modern tendency is to place less emphasis on the method or mode of annexation of the chattel and to give greater consideration to the intention of the parties as respects the use and adaptability thereof. In many instances, items can be removed from the building or structure itself without affecting materially the use of the building for other and different purposes. Often a building may be adapted for use by different tenants for various kinds of businesses, and numerous items of personalty ordinarily can be installed and removed to suit the uses to which the building is employed. In such cases, the applicability of the rules of law to those particular circumstances often poses some difficult problems.

The case at bar is relatively more simple in that we can easily dispose of some of the factors to be considered in determining the issue according to the established general rules. There is no question but that the air conditioning system and its component parts were all annexed to the realty as an integral part of the home. There is no complicated relationship existing between the parties in that we are not concerned with mortgagor or mortgagee, conditional vendor or vendee, landlord and tenant or other relationship which might have a material bearing in determining the question. We have for consideration here a vendor and purchaser of residence property. A residence usually has one use only, which is as a home for the occupant. In new construction today where an air conditioning system is installed and built into the structure, it is done as an integrated system of heating and cooling and it extends throughout the entire structure, usually having as its component parts pipes, electrical wiring, instruments for control of its operation, gas or other heating pipes, ducts to convey the air, blowers to move the air, a furnace to heat the air, a refrigeration unit to cool the air, and a com-

pressor, all of which items may be of different types of manufacture and varying methods of installation, but basically composing a heating and cooling system throughout the house and which is intended for the comfortable and convenient living of the occupants.

■■ It is common knowledge that the expanding economy of the valley areas of central and southern Arizona is due in large part to the widespread use of refrigeration systems, not only in business and commercial establishments but in residence properties. These plaintiffs, as practically all purchasers of residence properties in the Phoenix area, were materially concerned with the cooling system in the home. Many homes are purchased primarily because a refrigeration system exists therein. The plaintiff James B. Ott testified that the air conditioning system in this house was an integral part of the house and that it was very necessary for convenient living therein. He testified he wanted an air conditioned home and that the information about the system as contained in the brochure influenced him in regard to the purchase. Some purchasers will not purchase homes unless there is a refrigeration system, while others are content with an evaporative cooling system but it is almost universal that no new residence property in the Phoenix area can be sold without one or the other of the two general methods of cooling. We can, therefore, say that the intent of the parties in practically all home purchases presupposes the existence and inclusion therein of some type of cooling system and, unless special mention be made to the contrary, it seems to us that whatever cooling system is included in the house passes with the house as a component part thereof and necessary for the comfortable and more convenient living of the occupants.

■ In applying the test applicable herein we must necessarily conclude that where there is not sufficient evidence of an actual intent of the parties, the intent to make the personalty in question a part of the realty exists as implied by the circumstances of this case, and we hold the test for a determination that the property in question is a part of the realty has been met. In view of this conclusion, it is not necessary to discuss the questions raised on the measure of damages. The remedy, if any, of the plaintiffs was not a suit for breach of warranty.

The judgment is reversed, with instructions to enter judgment for the defendants.

PHELPS, C. J., and STRUCKMEYER, UDALL, and JOHNSON, JJ., concur.

Note: Justice BERNSTEIN having been the trial judge, Honorable LAURENS L. HENDERSON, one of the judges of the Superior Court, Maricopa County, was called to sit in his stead.