592 P.2d 1294

**COLUMBIA WESTERN CORPORA-
TION, an Arizona Corporation,
Appellant,**

v.

**Robert P. VELA and Sally G. Vela, husband and wife, Raymond V. Martinez and Ann Martinez, husband and wife, Appellees.**

**No. 1 CA–CIV 3874.**

Court of Appeals of Arizona,
Division 1,
Department B.

Jan. 30, 1979.

Brian W. Hendrickson, P. C., Tempe, for appellant.

Lewis & Morales by M. Wayne Lewis, Chandler, for appellees.

## OPINION

JACOBSON, Judge.

The basic issue in this appeal is whether the law will impose upon the builder of new home construction an implied warranty, following the sale of that home by the builder.

In the spring of 1974, plaintiffs Mr. and Mrs. Vela and Mr. and Mrs. Martinez bought homes from defendant Columbia Western Corporation (Columbia Western) which was both the seller and builder of the homes involved. Both homes were covered by a Warranty of Completion issued pursuant to Section 801 of the Housing Act of 1954, and Public Law 85–857 (38 U.S.C. § 1805). Under these statutes, the seller or builder is to warrant that the house is built in substantial conformity with the plans and specifications used by the Administrator of Veterans' Affairs in his valuation of the house. In the event of "substantial non-conformity" to the plans and specifications, the home buyer or owner must give written notice, within one year of original conveyance of title or initial occupancy, of the "instances of substantial non-conformity." There was an extended builder's warranty for on additional year on the Vela home.

The plaintiffs began having problems with their houses shortly after purchase, the primary one being that the walls began to crack. Defendant tried to make repairs, and was eventually instructed by plaintiffs' attorney to stop trying. Plaintiffs hired a soils engineering firm to examine the homes and surrounding area. By letter of April 4, 1975, plaintiffs' attorney was notified by the laboratory that:

> "It is our opinion that the existing soils probably possess sufficient volume change characteristics to have caused the cracking. It is likely that the clayey soils were relatively dry at the time of construction, and experienced some swelling beneath footings and slabs as surface waters infiltrated."

Plaintiffs sued on theory of breach of implied warranty, and on theory of breach of express warranty. Judgment was entered for plaintiffs, and defendant appeals. Appellant Columbia Western presents three major arguments:

(1) The judgment cannot be supported under a theory of breach of express warranty;

(2) The judgment cannot be supported under a theory of breach of implied warranty;

(3) The trial court erred in admitting evidence of damages occurring after the plaintiffs should have begun mitigating their damages.

Columbia Western's first argument is that breach of express warranty cannot serve as the basis for the judgment. Several reasons for this are urged, and we find one dispositive.

The express warranty allegedly breached applied only to instances of substantial nonconformity to the plans and specifications used administratively in valuing the houses. Columbia Western argues that plaintiffs' failure to introduce the plans and specifications into evidence is fatal to a claim under express warranty.

Plaintiffs contend that a soil report prepared for Columbia Western and introduced into evidence was a sufficient part of the

plans and specifications to satisfy the evidentiary basis. Therefore, they argue, proof of substantial nonconformity to the terms of the soil report can support a claim of breach of express warranty. The truth of plaintiffs' assertion is made academic by the following exchange which took place at trial:

"MR. LEWIS [attorney for plaintiffs]: I move that this exhibit No. 28 [the soil report] be admitted into evidence.

"MR. HENDRICKSON [attorney for Columbia Western]: Your Honor, I object on the grounds there's not proper foundation for any of the measurements, conclusions and so fourth, contained therein by virtue of the fact that it's based upon hearsay.

"MR. LEWIS: Your Honor, may I add to that. The purpose of having a report admitted into evidence is not to prove the truth of the statements contained in it, but rather knowledge on the part of the witness.

"THE COURT: I think it may be admissible at least on the issue of notice. It may be marked into evidence."

There was thus an express understanding between counsel and the trial court that consideration of the soil report was to be limited to the issue of notice. It must be so limited. *See Foreman & Clark Corp. v. Fallon,* 3 Cal.3d 875, 479 P.2d 362, 92 Cal. Rptr. 162 (1971); *American Produce Co. v. Marion Creamery & Poultry Co.,* 214 Or. 103, 327 P.2d 1104 (1958). Therefore, the soil report could not be considered as part of the terms of the plans and specifications, the plans and specifications could not be considered as part of the terms of the warranty, and it was impossible for the plaintiffs to show substantial nonconformity with something that was not in evidence.

Columbia Western next argues that the judgment cannot be supported under a theory of breach of implied warranty.[1] In this regard, Columbia Western relies on *Voight v. Ott,* 86 Ariz. 128, 132, 341 P.2d 923, 925 (1959), which stated:

"It is the general rule of law that implied warranties as to quality or condition do not apply to realty. *Allen v. Reichert,* 73 Ariz. 91, 237 P.2d 818."

*Voight* arose from the failure of an air conditioning system sold as part of a new house. The trial court gave judgment for the buyers. The Arizona Supreme Court reversed, based upon the principle quoted above, and based upon its finding that the air conditioning system was a fixture, and therefore "realty." In our opinion *Voight* is authority for the proposition that no implied warranties arise from the *sale* of realty, but is not dispositive of the issue of implied warranties arising out of the *construction* of new housing which ultimately becomes "realty."

We are drawn to this conclusion by the language of *Voight* itself:

"There is no complicated relationship existing between the parties in that we are not concerned with mortgagor or mortgagee, conditional vendor or vendee, landlord and tenant or other relationship which might have a material bearing in determining the question [whether the air conditioning system was a fixture]. *We have for consideration here a vendor and purchaser of residence property."* *Voight v. Ott, supra,* at 134, 927. (Emphasis added.)

In addition, the only authority cited by the supreme court for the quoted language was the case of *Allen v. Reichert,* 73 Ariz. 91, 237 P.2d 818 (1951). *Allen* was an action by a purchaser of realty against the vendors for breach of an implied warranty as to fitness (leaking roofs). *Allen* is silent as to implied warranties arising out of new construction.

As Columbia Western correctly points out, however, the sellers of the house in *Voight* were not the only defendants in that case. Also named as a defendant was Lloyd Fuller, doing business as Lloyd Fuller

---

1. As the issue was not raised, we do not in this decision address the question as to what effect, if any, the existence of an express warranty may have in excluding or modifying implied warranties in this context.

Building Company. Lloyd Fuller was apparently the actual builder of the house in *Voight,* and therefore, Columbia Western argues, the decision and language of the supreme court must be applicable to contractors, as well as vendors.

Closer inspection of the record reveals that Lloyd Fuller was a defendant in name only. He never testified there is no evidence that he was present during trial, and nothing suggests that he was represented by counsel. There is no indication that the possibility of an implied warranty arising from the construction of realty was litigated in the trial court, or considered by the supreme court. Under these circumstances, we do not believe *Voight* is authority on the issue of whether implied warranties exist on behalf of the builder-vendor of new construction.

This is especially true when we consider other Arizona cases that have found that a contractor impliedly warrants that the construction he undertakes which ultimately becomes realty will be performed in a good and workmanlike manner. In this regard, the following cases are applicable: *Kubby v. Crescent Steel,* 105 Ariz. 459, 466 P.2d 753 (1970); *Cameron v. Sisson,* 74 Ariz. 226, 246 P.2d 189 (1952); *Reliable Electric Co. v. Clinton Campbell Contractor, Inc.,* 10 Ariz. App. 371, 459 P.2d 98 (1969).

In *Kubby,* the lawsuit arose from the defendant's alleged failure to properly build a roof on plaintiff's shed. Although the contract involved called for the job to be done "in a workmanlike manner according to standard practices," the court nonetheless found that "[a] contractor impliedly warrants that he will perform in a workmanlike manner even though the contract itself does not contain an express warranty of good workmanship." *Kubby v. Crescent Steel, supra,* 105 Ariz. at 460, 466 P.2d at 754.

In *Cameron,* the contractor was a well-driller. The parties contracted for the construction of a well, with properly installed steel casing. After finding that there was

evidence from which the trial court could have inferred that the casing on the well came apart because of poor welding by the contractor, the court held that:

"It is incumbent upon a contractor who undertakes to build a structure or as in this case, a well, to do so in a manner befitting a skilled well-driller. *Newlee v. Heyting,* 167 Or. 288, 117 P.2d 829. From the testimony in the instant case it can reasonably be inferred that plaintiff [contractor] had not drilled the well in a workmanlike manner." *Cameron v. Sisson, supra,* 74 Ariz. at 230, 246 P.2d at 191.

*Newlee v. Heyting,* 167 Or. 288, 117 P.2d 829 (1941), cited by the supreme court, involved the construction of a house.

*Reliable Electric* involved the faulty installation of the electrical system of a brick kiln. The court held that "[e]ven in the absence of a specific contractual provision, the law implies a requirement that a contractor who undertakes to design and install an electrical system must do so in a good workmanlike manner and in a manner befitting a skilled contractor." *Reliable Electric Co. v. Clinton Campbell Contractor, Inc., supra,* 10 Ariz.App. at 374, 459 P.2d at 101.

Admittedly the Arizona cases do not discuss the implied warranty of contractors in relationship to their work product subsequently becoming part of realty, and thus do not face squarely the applicability of the implied warranty doctrine to the builder-vendor. However, facially a roof, a well, and arguably an electrical system are as much a part of "realty" as a house constructed on the land.

Moreover, these "contractor" cases reflect the trend of cases from other jurisdictions which have refused to apply the doctrine of caveat emptor to the builder-vendor of new construction. The seminal case in the United States [2] in this area seems to be *Carpenter v. Donohoe,* 154 Colo. 78, 388 P.2d 399 (1964). In *Carpenter,* the court noted that

---

2. For earlier dictum abrogating the rule of caveat emptor in the purchase of a house under

construction, *see Miller v. Cannon Hill Estates, Ltd.,* 2 K.B. 113 (1931).

it had previously applied implied warranty liability on "nearly completed" construction and found not to apply the same rule to completed construction to be "incongruous." The court went on to state:

"We hold that the implied warranty doctrine is extended to include agreements between builder-vendors and purchasers for the sale of newly constructed buildings, completed at the time of contracting. * * * Where, as here, a home is the subject of sale, there are implied warranties that the home was built in workmanlike manner and is suitable for habitation." *Carpenter v. Donohoe, supra,* 154 Colo. at 83–84, 388 P.2d at 402.

The basis for imposing implied warranties on new home construction was aptly stated in *Tavares v. Horstman,* 542 P.2d 1275, 1279 (Wyo.1975):

"Since World War II homes have been built in tremendous numbers. There have come into being developer-builders operating on a large scale. Many firms and persons, large and small operators, hold themselves out as skilled in home construction and are in the business of building and selling to individual owners. Developers contract with builders to construct for resale. Building construction by modern methods is complex and intertwined with governmental codes and regulations. The ordinary home buyer is not in a position, by skill or training, to discover defects lurking in the plumbing, the electrical wiring, the structure itself, all of which is usually covered up and not open for inspection."

Or as stated in *Pollard v. Saxe & Yolles Development Co.,* 12 Cal.3d 374, 379, 115 Cal.Rptr. 648, 651, 525 P.2d 88, 91 (1974)[3]:

3. This case imposed the doctrine of implied warranties not only on the builder-vendor, but also upon the developer-vendor. We do not need to take that step in this case.

4. *See Cochran v. Keeton,* 287 Ala. 439, 252 So.2d 313 (1971); *Vernali v. Centrella,* 28 Conn.Supp. 476, 266 A.2d 200 (1970); *Bethlahmy v. Bechtel,* 91 Idaho 55, 415 P.2d 698 (1966); *Theis v. Heuer,* 264 Ind. 1, 280 N.E.2d 300 (1972); *Crawley v. Terhune,* 437 S.W.2d 743

"Further, unlike the purchaser of an older building, he [the new home purchaser] has no opportunity to observe how the building has withstood the passage of time. Thus he generally relies on those in a position to know the quality of the work to be sold, and his reliance is surely evident to the construction industry."

The retreat from the rule of caveat emptor in the builder-vendor setting was strongly stated in the case of *Humber v. Morton,* 426 S.W.2d 554, 562 (Tex.1968):

"The caveat emptor rule as applied to new houses is an anachronism patently out of harmony with modern home buying practices. It does a disservice not only to the ordinary prudent purchaser but to the industry itself by lending encouragement to the unscrupulous, fly-by-night operator and purveyor of shoddy work."

It appears that every jurisdiction which in the last fifteen years has looked at this issue has not hesitated to apply an implied warranty to new home construction,[4] leading one court to observe:

"Twenty years ago one could hardly find any American decision recognizing the existence of an implied warranty in a routine sale of a new dwelling. Both the rapidity and the unanimity with which the courts have recently moved away from the harsh doctrine of caveat emptor in the sale of new houses are amazing, for the law has not traditionally progressed with such speed." *Wawak v. Stewart,* 247 Ark. 1093, 449 S.W.2d 922 (1970).

In view of this overwhelming authority we must agree with the statement made in Comment, *Caveat Emptor in Sales of Real Property—Time for a Reappraisal,* 10 Ariz. L.Rev. 484, 491 (1968):

(Ky.1969); *Hartley v. Ballou,* 286 N.C. 51, 209 S.E.2d 776 (1974); *Yepsen v. Burgess,* 269 Or. 635, 525 P.2d 1019 (1974); *Padula v. J. J. Deb-Cin Homes, Inc.,* 111 R.I. 29, 298 A.2d 529 (1973); *Rutledge v. Dodenhoff,* 254 S.C. 407, 175 S.E.2d 792 (1970); *Rothberg v. Olenik,* 128 Vt. 295, 262 A.2d 461 (1970); *House v. Thornton,* 76 Wash.2d 428, 457 P.2d 199 (1969). *See generally* Annot., 25 A.L.R.3d 383 (1969).

"Indeed, the purchase of a home is not an everyday transaction; it is usually the most important and expensive purchase of a lifetime. Imposition of a warranty of quality and condition on the structural components, which during the process of construction become 'attached' to the land and are thereby transformed from personalty to realty, would not only conform to the reasonable expectations of the vendee, but would also eliminate a trap for unwary buyers who fail or are unable to secure an express warranty."

 We therefore hold as to new home construction, that the builder-vendor impliedly warrants that the construction was done in a workmanlike manner and that the structure is habitable. We further hold that such a builder may not escape the imposition of such warranties merely because a "sale" placed the purchaser in a position to discover the defects.

 As a final matter, Columbia Western contends that the trial court erred in failing to exclude evidence of damage occurring to the houses after the time that the plaintiffs should have begun mitigating damages. The argument is that when plaintiffs' attorney received a letter from a soil testing laboratory indicating that the cracking of plaintiffs' homes was likely due to the infiltration of surface waters, plaintiffs were on constructive notice that they should stop watering the plants around the edges of their homes. Columbia Western argues that since the evidence shows that the plaintiffs did not stop watering their plants, it was error to admit any evidence of damage occurring after receipt of the letter.

The simple answer to this contention is that there was no evidence, one way or the other, that the watering done after the date of the letter aggravated or increased the amount of cracking. Moreover, the trial court's judgment was substantially less than the alleged damage proven by the plaintiffs. Under these circumstances, we view the total amount of the judgment in the light of whether it is supported by substantial evidence. We find the judgment as to damages so supported.

The judgment is affirmed.

SCHROEDER, P. J., and OGG, C. J., concurring.