IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

TINA ZAMBRANO, *Plaintiff/Appellant*,

*v.*

M & RC II LLC, et al., *Defendants/Appellees*.

No. 1 CA-CV 19-0635
FILED 7-29-2021

Appeal from the Superior Court in Maricopa County
No. CV2017-008174
The Honorable Danielle J. Viola, Judge

**REVERSED AND REMANDED**

COUNSEL

Vial Fotheringham, LLP, Tempe
By Darrien Shuquem
*Counsel for Plaintiff/Appellant*

Stinson LLP, Phoenix
By James E. Holland, Jr., Michael Vincent
*Counsel for Defendants/Appellees*

Kasden LippSmith Weber Turner, LLP, Phoenix
By Kenneth S. Kasden, Scott A. Booth, Michael J. White
*Counsel for Amicus Curiae Concerned Consumers of Magma Ranch*

Jones, Skelton & Hochuli, P.L.C., Phoenix
By Robert R. Berk, Eileen Dennis GilBride
*Counsel for Amicus Curiae Leading Builders of America*

---

**OPINION**

Judge David B. Gass delivered the opinion of the Court, in which Presiding Judge Jennifer M. Perkins and Judge Michael J. Brown joined.

---

**G A S S**, Judge:

**¶1** Tina Zambrano appeals the superior court's grant of summary judgment to M & RC II, LLC, and Scott Homes Development Company (Scott Homes, collectively). Zambrano argues a buyer cannot waive—and a builder cannot disclaim—the implied warranty of workmanship and habitability, even if the builder provides the buyer an express warranty. We agree and reverse.

**FACTUAL AND PROCEDURAL HISTORY**

**¶2** Zambrano signed a purchase agreement with M & RC to buy a newly built home for herself. The agreement was six pages long. Paragraph 15 of the agreement read as follows:

> 15. SELLER'S LIMITED WARRANTY.
>
> (a) At Closing, Seller [M & RC] shall issue a "Home Builder's Limited Warranty" to Buyer, a sample of which has been provided to Buyer prior to the execution of this Contract. The Home Builder's Warranty is the only warranty applicable to the purchase of the Property.

Zambrano initialed paragraph 15. Immediately below her initials and as part of paragraph 15, the agreement reiterated:

> **THE HOME BUILDER'S LIMITED WARRANTY REFERENCED ABOVE IS THE ONLY WARRANTY APPLICABLE TO THE PURCHASE OF THE PROPERTY. ALL OTHER EXPRESS OR IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, HABITABILITY AND WORKMANSHIP ARE**

2

**HEREBY DISCLAIMED BY SELLER AND ITS AFFILIATES AND WAIVED BY BUYER, ANY IMPLIED WARRANTY THAT MAY EXIST DE[S]PITE THE ABOVE DISCLAIMER IS HEREBY LIMITED TO A ONE (1) YEAR PERIOD.**

Zambrano also initialed paragraph 32 in which she confirmed she had read and understood the agreement's terms.

¶3            The separate, forty-page express warranty's cover page also specifically disclaimed any implied warranties, saying:

> **WE** make no housing merchant implied warranty of habitability or any other warranties, express or implied, in connection with the sales contract or the warrantied **HOME**, and all such warranties are excluded, except as expressly provided in this **BUILDER'S LIMITED WARRANTY**. There are no warranties which extend beyond the face of this **BUILDER'S LIMITED WARRANTY**.

¶4            Zambrano sued, asserting breach of contract and breach of the implied warranty of habitability and workmanship. Zambrano alleged construction defects including popped nails in the drywall and defects affecting her home's foundation, such as soil preparation, grading, and drainage.

¶5            Scott Homes moved for summary judgment, arguing Scott Homes disclaimed—and Zambrano waived—all implied warranties. The superior court granted Scott Homes's motion. The parties stipulated to dismiss the breach-of-contract claim against M & RC.

¶6            Zambrano timely appealed. This court has jurisdiction under article VI, section 9, of the Arizona Constitution, and A.R.S. § 12-2101.A.1.

## ANALYSIS

¶7            Summary judgment is appropriate when "no genuine dispute as to any material fact" exists and "the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a); *see also Orme Sch. v. Reeves*, 166 Ariz. 301, 305 (1990). This court reviews a superior court's grant of summary judgment *de novo*, viewing the facts in the light most favorable to the non-movant. *See KB Home Tucson, Inc. v. Charter Oak Fire Ins. Co.*, 236 Ariz. 326, 329, ¶ 14 (App. 2014).

¶8        Zambrano argues Arizona law unequivocally precludes a waiver or disclaimer of the implied warranty of workmanship and habitability. To resolve this issue, we must weigh the public policy underlying the implied warranty of habitability and workmanship against the interest in enforcing a freely negotiated waiver. *See 1800 Ocotillo, LLC, v. WLB Group, Inc.*, 219 Ariz. 200, 202, ¶ 8 (2008).

¶9        In 1979, Arizona judicially eliminated the *caveat emptor* rule for newly built homes. *Columbia Western Corp. v. Vela,* 122 Ariz. 28, 32–33 (App. 1979). In *Columbia Western*, this court explained its reasoning:

> The caveat emptor rule as applied to new houses is an anachronism patently out of harmony with modern home buying practices. It does a disservice not only to the ordinary prudent purchaser but to the industry itself by lending encouragement to the unscrupulous, fly-by-night operator and purveyor of shoddy work.

*Id.* at 32 (quoting *Humber v. Morton*, 426 S.W.2d 554, 562 (Tex. 1968)). In its place, this court imposed the implied warranty of workmanship and habitability into every new home construction contract. *Id.* at 33. The implied warranty encompasses the proper design, preparation, and construction of a home. *See Woodward v. Chirco Constr. Co.*, 141 Ariz. 514, 516 (1984) (citing *Cosmopolitan Homes, Inc. v. Weller*, 663 P.2d 1041, 1045 (Colo. 1983)).

¶10        In the decades since *Columbia Western*, Arizona courts have consistently enforced the implied warranty and expanded it. *See Richards v. Powercraft Homes Inc.*, 139 Ariz. 242, 245 (1984) (holding subsequent buyer may enforce implied warranty given by a builder/seller); *Lofts at Fillmore Condo. Ass'n v. Reliance Com. Constr., Inc.*, 218 Ariz. 574, 577–78, ¶¶ 15–19 (2008) (holding initial buyer may enforce implied warranty against builder that was not party to the original sales contract); *Sirrah Enters., LLC v. Wunderlich*, 242 Ariz. 542, 544–45, ¶¶ 8–12 (2017) (recognizing implied warranty is a contract right). A builder cannot rely on a disclaimer of the implied warranty, standing alone, to avoid the implied warranty. *Buchanan v. Scottsdale Env't Constr. and Dev., Inc.*, 163 Ariz. 285, 286–87 (App. 1989). The same is true when a subsequent purchaser seeks to enforce the implied warranty. *Nastri v. Wood Bros. Homes, Inc.*, 142 Ariz. 439, 441 (App. 1984) (citing *Richards*, 139 Ariz. at 245), *rejected on other grounds by Flagstaff Affordable Hous. Ltd. P'ship v. Design All., Inc.*, 223 Ariz. 320, 325, ¶ 23 (2010).

¶11        "[A]bsent legislation specifying that a contractual term is unenforceable," this court looks to public policy to judge the term's validity. *1800 Ocotillo*, 219 Ariz. at 202, ¶ 8. Arizona's public policy flows from "its constitution, legislative acts, and when the legislature has not spoken, [from] its judicial decisions." *Nastri*, 142 Ariz. at 442. The implied warranty's overarching goal is to "protect innocent purchasers and hold builders accountable for their work." *Richards*, 139 Ariz. at 245 (quoting *Moxley v. Laramie Builders, Inc.*, 600 P.2d 733, 736 (Wyo. 1979)).

¶12        The public policy underlying the implied warranty does not exist in a vacuum. Arizona also has a public policy of allowing parties to contract freely without interference. "Society [] broadly benefits from the prospect that bargains struck between competent parties will be enforced." *1800 Ocotillo*, 219 Ariz. at 202, ¶ 8 (citing Restatement (Second) of Contracts § 178 cmt. b); *see also Lassen v. Benton*, 86 Ariz. 323, 327 (1959) ("[T]he usual and most important function of courts of justice is rather to maintain and enforce contracts than to enable parties thereto to escape their obligation on the pretext of public policy, unless it clearly appears that they [contravene] public right or the public welfare." (quoting *Granger v. Craven*, 199 N.W. 10, 11 (Minn. 1924))). Accordingly, Arizona courts decline to enforce a contract term on public policy grounds "only when the term is contrary to an otherwise identifiable public policy that clearly outweighs any interests in the term's enforcement." *1800 Ocotillo*, 219 Ariz. at 202, ¶ 8 (citation omitted).

¶13        In weighing the two, Scott Homes's argument does not give appropriate weight to the public policy underlying the warranty. Our supreme court has recognized the important reasons undergirding *Columbia Western*'s purchaser-protection, including "that house-building is frequently undertaken on a large scale, that builders hold themselves out as skilled in the profession, that modern construction is complex and regulated by many governmental codes, and that homebuyers are generally not skilled or knowledgeable in construction, plumbing, or electrical requirements and practices." *Richards*, 139 Ariz. at 245; *see also Lofts at Fillmore Condo. Ass'n*, 218 Ariz. at 576–77, ¶¶ 9–12 (discussing the well-established policy considerations in *Columbia Western* and its progeny).

¶14        Further, Scott Homes reads *1800 Ocotillo*'s freedom-of-contract language too broadly. In that case, the supreme court enforced a contractual liability limitation between a builder and a surveying and engineering firm. 219 Ariz. at 201, ¶¶ 1–2. The supreme court said the liability-limitation term was not contrary to an identified public policy that clearly outweighs interest in its enforcement. *Id.* at 204, ¶ 21. But in that

case, the supreme court could not identify a governing public policy interest *at all*—let alone one weighing against enforcement. *Id.* at 202–04, ¶¶ 9–21. Further, that case involved a professional services contract between two companies—not a contract between a builder and an end-buyer of a home who planned to live in what the builder constructed. *Id.* at 201, ¶ 2. Here, long-standing public policy reasons support the judicially created, implied warranty that protects home buyers such as Zambrano.

¶15 We recognize a trend in some states to allow waivers of the implied warranty. *See, e.g.*, *Turner v. Westhampton Ct., L.L.C.*, 903 So. 2d 82, 92–93 (Ala. 2004) (express warranty offered in consideration sufficient to waive all other warranties); *Bass v. Pinnacle Custom Homes, Inc.*, 592 S.E.2d 606, 607–08 (N.C. Ct. App. 2004) (express warranty given with clause disclaiming "all other warranties" sufficient to waive implied warranties); *Kirkman v. Parex, Inc.*, 632 S.E.2d 854, 858 (S.C. 2006) (disclaimer only valid if "(1) conspicuous, (2) known to the buyer, and (3) specifically bargained for."(quoting *Burbo v. Harley C. Douglass, Inc.*, 106 P.3d 258, 263 (Wash. Ct. App. 2005))). Other states, however, have rejected this trend, recognizing enforcement of a "disclaimer of a warranty protecting a purchaser from the consequences of latent defects would defeat the very purpose of the warranty." *Davencourt at Pilgrims Landing Homeowners Ass'n v. Davencourt at Pilgrims Landing, LC*, 221 P.3d 234, 252–53, ¶ 58 (Utah 2009); *see also Jones v. Centex Homes*, 967 N.E.2d 1199, 1202, ¶ 14 (Ohio 2012); *Gym-N-I Playgrounds, Inc. v. Snider*, 220 S.W.3d 905, 913 n.11 (Tex. 2007) (recognizing statutes prohibiting parties from contractually waiving or modifying the implied warranty of habitability).

¶16 As we study the scales, we conclude the public policy supporting the implied warranty clearly outweighs the freedom-of-contract interest in the waiver's enforcement. A new home buyer cannot waive—and a builder cannot disclaim—the implied warranty of workmanship and habitability. This prohibition precludes a waiver even when, as here, the builder gives an express warranty in consideration for the waiver.

¶17 Arizona may one day change course and allow for an implied-warranty waiver or disclaimer. But we cannot chart that new direction without further guidance from our supreme court. Until then, Arizona courts will continue to prohibit such waivers and disclaimers as some states continue to do. *See, e.g.*, *Davencourt at Pilgrims Landing*, 221 P.3d at 252–53, ¶ 58.

**ATTORNEY FEES AND COSTS ON APPEAL**

**¶18**　　　　Zambrano requests her reasonable attorney fees associated with this appeal under A.R.S. § 12-341.01. We grant her request as the prevailing party and award her reasonable attorney fees and costs upon compliance with ARCAP 21.

**CONCLUSION**

**¶19**　　　　We reverse the superior court's summary judgment. We remand the case to the superior court for consideration of Zambrano's pending claims.



AMY M. WOOD • Clerk of the Court
FILED:　AA